I think it's important as an overview what this case is about. This case is about the 17 days that my client lived with a cloud over his head, uncertain that he could stay in his home where he lived with his wife, his single daughter, and their two small children. Could I start with a different point, though? What's your theory as to why Wilshire's position and where Wilshire was made it even potentially liable for violation of the automatic stay or for willful violation? Is it because Wilshire is a part owner of the property or there's a genuine issue, or is it because Wilshire was acting as a doing credit collection activities in a sort of freestanding way? Can you explain that? Yes, it's twofold. First of all, there's a disputed issue of material fact, and this is a review, a de novo review of a grant of summary judgment against my client. The disputed issue of material fact is that Wilshire repeatedly claimed to have an interest in the note. Three times we've put into the record were on different occasions they claimed to hold an interest in the note. So you're saying that there's a genuine issue as to whether Wilshire was a beneficiary under the deed of trust? Yes. Is that correct? In fact, the only evidence that they come forward with is a custodian of record from somebody who is not trained as an attorney, who interprets a contract which they did not provide, that says, I reviewed the records and they don't have an interest in the note. And what's your second? I'm sorry. Go ahead. My point simply is I don't even know how they survived our summary judgment under those circumstances. They didn't come forward with any admissible evidence. A custodian of record testifying about a document that he's not providing, that's nothing. That's nothing. The second issue is simply this, and this is undisputed from their own witnesses. They're the ones that hired the trustee. They were the ones that were directing the trustee. And it was Wilshire that finally, after 17 days of agony for my client, instructed the trustee to stand down and unwind the trustee sale. And during the 17 days, my client did not know if he could stay in his home. The only person in the world telling him he could stay there was his debtor's lawyer, me. And he had a little bit of concern about whether the world was wrong or I was wrong. And it was after I filed a complaint, after giving them notice, that they finally unwound the sale. But clearly, this is a disputed issue of material facts. So just you're saying there's a genuine issue as to whether Wilshire was calling the shots with the trustee. And if Wilshire was calling the shots, then Wilshire could be liable for willful violation of the automatic stays. Yes. These are independent grounds. Okay. So you've got the two separate grounds. Independent grounds, yes. And I think we've got them in spades on both of them. They don't have any – there was no one else directing the trustees. Trustees don't hire themselves. Trustees don't decide to proceed with trustee sales on their own. They get their information from another entity. And that was Wilshire. It's the only actor here playing in this proceeding. Let me ask you about another point. Now, the violation of the automatic stay requires that there be a willful violation. And at least with respect to the failure to stop the trustee sale, you're relying on imputed knowledge from S&A. So let's just assume that there's a genuine issue of material fact that S&A was Wilshire's attorney. And, you know, we haven't decided that, but assume that. The knowledge that Wilshire would have had would have been imputed from – and let's assume that, you know, knowledge can be imputed from the attorney to the principal. But is there a case that you could direct me to that says imputed knowledge that a petition has been filed in bankruptcy is sufficient to hold someone liable for a willful violation? I just have trouble with willfulness suggesting immense ray of intention, knowing, and the fact that you're asking us to impute knowledge from their alleged attorney. Yes, I cited – I believe I cited those in my brief. And I believe it's the Winthrow case. And there's a number of other cases. Any Ninth Circuit case? No. Have we ever ruled on that? I do not believe there's a Ninth Circuit case to hold that – There's a lot of bankruptcy cases holding that. Right. Right. Exactly. Okay. But there's no – has any circuit weighed in on that issue? I did not know. I am unaware of any circuit cases to hold that. But what you have is a uniform body of law among the lower cases that hold that. Okay. Thank you. But no Ninth Circuit case. What's the rationale for that, as you see it, imputing a willful violation to somebody who probably wasn't willful? Well, first of all, the way that lawyers get to communicate with other parties is through the lawyers. And if you can simply hold up as a shield and say, well, only my lawyer got it, you effectively insulated yourself from immunity. The other thing – and I think this is important about the case – this is not about the four hours where we notified them there was a trustee sale and they didn't get it stopped. That happens. It happens probably once every two or three years in my practice. What's unusual about this case is the next 17 days where they wouldn't stand down. Let me stop you for a moment because you make two claims in your briefs, if I'm reading them correctly. One is that the failure to stop the sale was a willful violation of the automatic stay. The second point was the failure to unwind on some speedy time framework was a violation. Are you saying – are you still saying that there's two different things we should look at? Or are you saying it's a – okay. I think so. And I think our damage has really come from the second claim. It's the 17-day delay. And, in fact, we gave them the opportunity to simply avoid a suit over the first action by simply winding down the sale. And I don't think it would be fair to come in here and say, hey, punish them because we gave them four hours' notice and they didn't process it within the four hours. That's – that would be unusual. So your damages are based on the – Based on the fact that after the – No, the damages are based on after they know by December 3rd. And they admit they know by December 3rd, the day after the trustee sale. Well, they say they don't know what the time was. They don't know whether the sale happened before or after the petition was filed. Yeah, but it's stamped right on the petition and we're right there and the bankruptcy court's right there. The idea that you couldn't figure out what time this trustee – what time we filed the bankruptcy, you know, it's a matter of record, federal record. It's a matter of calling me. This is an easy one to fix. No, I didn't see it. We're calling them saying, hey, we beat you. We got it done. Even the fax that we sent them saying, hey, we filed this bankruptcy, the very date – the time of the fax predates their trustee sale. Right. How could we have been sending a fax before some – saying this is what's happened before it's happened? Well, I'm looking at the fax. You know, obviously you could have gotten the document prepared and sent it in without having actually filed it with the court, and I'm trying to see what's – Did you send it again to them on the 4th? When things didn't get back down on the 4th, so the trustee sale's the 2nd, they got notice the morning of the 2nd. They admit they got it by the 3rd from their own lawyers. On the 4th, we send another letter saying, hey, why haven't you responded now? You know, it's two days. What's happening? We're going to give you one more week to get this straightened out. It's that delay that's unusual about this case. Tell me what the standard is. Now, in Eskimos, the proceeding had been pending. There was litigation proceeding pending. But if we were to say, well, the failure to unwind, if we were saying the failure to unwind can be a – or the failure to end a proceeding that's in place can be a willful violation, how long is too long? What's the standard we use to evaluate that? I think there's a case that may help with that called Abrams. It's a Ninth Circuit case. I'm afraid I don't have the site with me at the moment, but it involves when a car was repossessed in violation of the state but without knowledge, and there the Ninth Circuit held. Even if you take the car without knowledge of the stay, you have a duty to return it promptly. And I think promptness is one of the things here. And I don't think this, because it's actually not a – well, perhaps it is. I don't know if this Court has to rule on is 17 days reasonable, but 17 days is far outside the norms of how these things get resolved. They usually get resolved in two or three days. And it's insightful here. It wasn't until after they'd blown through two deadlines and not responded to numerous phone calls that we finally instituted the suit. And it was the lawsuit that finally got them to stop. And this went on for 14 days before I filed the suit. They finally stopped three days later. Do you want to reserve your remaining time?  Good morning, and may it please the Court, Bradley Pack, on behalf of Wilshire Credit Corporation. Your Honors, Mr. Ellett began his argument by telling you his view of what this case is about. Not surprisingly, we have a somewhat different view. And I would submit that what this case is really about is the debtor's efforts to hold Wilshire Credit Corporation responsible for the actions of the third party Foresight Investment, with whom Wilshire had absolutely no relationship, based upon Foresight's purchase of the debtor's residence at a trustee sale that Wilshire did not conduct. Well, but there's two points here. One is the sale proceeded after, allegedly, Wilshire knew about it or had imputed knowledge from S&A. And certainly the e-mail traffic all suggests Wilshire is telling the trustee what to do. So it's hard to say that there was no connection there. Well, first of all, Your Honor, I do want to be clear that there were, in fact, two state violations that occurred in this case, as you mentioned. And the first was the sale of the debtor's residence at the trustee's sale. However, that trustee's sale was conducted by the trustee, not by Wilshire. And while you say that there is some connection with the e-mail traffic, suggests that there's some connection there, there's no genuine issue of fact as to whether the trustee was acting on Wilshire's   for example, how did this go? Didn't Wilshire have stopped the sale from going forward? Is there any evidence suggesting that Wilshire had no authority to have stopped the sale? There's no evidence that suggests that Wilshire did have the authority to stop the sale. And in fact, all the evidence suggests that Wilshire did not, and that it was merely the lonesome trustee. Well, I guess their argument is, and this is what I feel like we're into some factual dispute, is that there was some evidence of the hiring and control, and that that is the factual dispute that somehow needs to be resolved. There's no genuine factual dispute there, Your Honor. And on a summary judgment motion, the standard is whether there's a genuine issue that can lead a reasonable fact finder to find a fact in favor of the nonmovement. And here there isn't. All of the actual loan documents themselves clearly indicate who the beneficiary is under the deed of trust, which in this case is LaSalle National Bank, who the trustee is, which in this case is Fidelity. And the only role that Wilshire has in this case is as a loan servicer. Now, listen. How about on the unwind, which is their second argument? So Wilshire gets the notice, does its due diligence, determines that, in fact, the sale occurred after the petition in bankruptcy had been filed. And then at the end of the 17 days, I guess after the note, after the suit is filed, tells the trustee, can you unwind it? It certainly seems like it's calling the shots. Why wasn't that delay too long? And Wilshire had an obligation to exercise its, what apparently had authority over the trustee to unwind the sale. Why didn't it have an obligation to do that earlier? Well, first of all, Your Honor, I think inherent in your question is the assumption that it was even necessary for the trustee to unwind the sale. And then there's the issue of whether or not Wilshire did, in fact, have any authority over the trustee. Was it not necessary for the trustee to unwind the sale? You're saying the sale was valid under bankruptcy law? I'm saying just the opposite, Your Honor. The sale was invalid as a matter of law. And it's clear under both Arizona law and Ninth Circuit law that a trustee sale, which is held in violation of the automatic stay, without knowledge of the debtor's bankruptcy petition, is void as a matter of law. And, in fact, that's exactly what it is. In fact, there's an Arizona statute, the Arizona trustee sale statute, ARS Section 33-810C, says that if you conduct a trustee sale that's void for any reason, that's void because of an unknown bankruptcy stay, then the sale is automatically void and it's deemed continued for a period of 28 days. So, in this case, all that Fidelity is doing in this, and just to be clear, I believe it's actually 15 days, not a significant difference, but the petition was filed on the 2nd and then the money was returned to the third-party purchaser on the 17th. But, at any rate, during that 15-day period, all Fidelity is doing is maintaining the status quo. You've got a trustee sale that's void in the first place. Fidelity has the purchase money in its possession. And, again, it's Fidelity that's holding the purchase money, not Wilshire. But Fidelity is holding the purchase money, and, in the interim, it's investigating when exactly this bankruptcy petition was filed. It doesn't issue a trustee's deed, so there's no deed that's recorded. And you've got a sale that's already void in the first place. And, too, it's important to mention that, well, there were apparently some communications between the trustee and the third-party purchaser, although I believe that's based on hearsay contained in an e-mail. What they're telling the third-party purchaser is, we're continuing to investigate whether or not this sale is valid. And, Your Honor, well, Mr. Ellett makes the argument that, well, 15 days or 17 days or whatever it is is too long a period of time for this sale to be, quote, unquote, unwound. As the district court properly found, if there's any blame to be had here, the blame rests with the Debtors' Council, because Mr. Ellett's an experienced bankruptcy practitioner. He knows that it's not a loan servicer that conducts a trustee sale, but it's the trustee. And there's nothing preventing Mr. Ellett from contacting the trustee, which is Fidelity, and saying, here's a copy of the bankruptcy petition, here's a date and time stamp that shows you exactly when it was filed. Now, you need to go and do whatever it is you need to do to stop foresight from continuing with this eviction proceedings. If his allegations are correct, the fact that there might have been alternate paths doesn't necessarily let the other party off the hook, correct? Alternate paths? Well, I mean, you're saying he should have called up the trustee. He should have gone to the trustee. He's saying, well, no, Wilshire is a surrogate for the trustee. So the fact that there might have been other means by which to notify or to take action, it doesn't somehow cancel this case out. Just taking his facts as he argues them, I don't know if it's correct or not. But I'm just trying to understand how your argument changes the legal impact of his allegations. Well, first of all, I submit that it's not correct. And I think the evidence is there in the record that it's not correct. But even if it were, even if it were proper for Mr. Ellett to contact Wilshire and tell him this is bankruptcy petitions filed and that's all that he needed to do in order to properly notify the trustee, still you can't hold the trustee liable for the actions of foresight. What foresight did in this case, that's what caused the debtor's damages. It was foresight going out, filing this bankruptcy petition, filing this forcible entry and detainer petition in justice court and continuing with that action, even after foresight knew that the debtor had filed his bankruptcy petition, which was the proximate cause of the debtor's damages. And that's what, I think that's exactly what the district court found in its judgment, affirming the bankruptcy court's entry in the summary judgment. Well, what if a fact finder were to conclude that Wilshire was controlling the actions of Melmont and Fidelity? If it were to find that Wilshire was controlling Melmont and Fidelity. Yeah, does that make a difference, given your theory that, well, the sale was void, so nothing really had to be done. It was between the trustee and foresight and Brown was free and clear. Your Honor, I don't think that in this case it would make a difference. Even assuming that there were no dispute as to whether Wilshire were controlling the actions of the trustee. Again, all the trustee is doing during this period after the bankruptcy petition is filed and after they get notice from Mr. Elliott is maintaining the status quo. They're holding the funds of a third party. They're not holding the debtor's funds, and they're simply trying to determine when exactly this bankruptcy petition was filed, so they can know whether or not there was a sale. Could we go back to the status quo, because I suppose it has different meanings to different people. But under the way that you explained, you're saying that as a matter of law that, in fact, the transaction is void. And is it void ab initio? I mean, at what point is it void? It is void ab initio. Any under Ninth Circuit law, and I believe it's the Schwartz line of cases in its progeny, any trustee sale or any action really that's taken in violation of the automatic stay is void as a matter of law. This is not a case where the debtor's car is repossessed and it's not returned to him, so the debtor is deprived of his car for 15 days. This is a case where you have a trustee sale. It didn't have any effect in the first place. And not only that, but Fidelity is actually doing exactly what it should be doing, which is investigating the date and time this bankruptcy petition was filed. Had the trustee sale taken place at any point before the bankruptcy petition was filed, then it would have been valid. And then there would have been no reason for them to really do anything, because they wouldn't have any obligation to do so. But you're almost saying they don't really have an obligation anyway because it's already void as of that moment. That's one of the arguments that I'm making, Your Honor, yes, that they don't have an obligation because the trustee sale is void. I see that I'm running out of time, so I'll sum up real quickly. The other points that I just wanted to be clear is that, again, Wilshire can't be held vicariously liable for the trustee's acts because it's not the trustee. And if you were to extend Eskimos so far as to find a willful stay violation in this case, I think the court would be opening up the floodgates to a rash of wasteful satellite litigation over innocent stay violations. As Mr. Ellett pointed out, what happened in this case happens all the time in bankruptcy court. You get a debtor that waits until the very last moment to file its bankruptcy petition and then doesn't notify the proper party or does so right before the trustee sale is about to occur, and then a trustee sale happens. This is not the case to find a willful stay violation based on imputed acts of anybody. Even if knowledge could be imputed, you cannot, under these circumstances, impute willfulness or the element of intent. And accordingly, we would respectfully request that the court uphold the summary judgment and the district court's decision affirming summary judgment. Thank you. I have two questions for you. One, what are the claimed damages? And two, how do you respond to counsel's argument that in some ways this is kind of a useless horse race because the transaction is void as a matter of law? Every stay violation is void ab initio. You could never bring a stay violation action if he's correct. It's a dead bang loser. This thing is brought up every time. I thought they abandoned it here because they didn't raise it. Every stay violation is void ab initio. You could never sue on it if that's the defense. Well, but you have these two different periods. One is did they allow the sale to go forward, which is clearly a stay violation. Right. Could be willful, depending. But the second one is they didn't promptly unwind. And what opposing counsel is saying, well, there was nothing to unwind because the sale was void and debtor was in his house and there was nothing to do. It was just working out the money exchange between trustee and foresight. Right. And had I not moved forward to set aside this sale, my client would be out of his house and somebody else would be in it. How is that? Now, maybe that title would be void. So what? Until the courts enforce something, it doesn't matter. We're talking about reality. And until the courts rule and give you a piece of paper that says this is void, you don't have it. You don't have it anymore. So it's very nice to say it's void ab initio. That doesn't mean that everybody is going to comply with the void ab initio. That's why we have courts to come in and say, Your Honor, I need my ruling that this is a stay violation. I need it. And Mr. Brown needed it here. He couldn't sleep at night. He's in my office crying and shaking. He's begging me to do something. I don't understand, as a debtor's counsel, how you can look at that and say, oh, that's nothing. That's unimportant. How was he damaged? He was damaged. Imagine going home tonight and being locked out of your house or being told it's not your house anymore. That's damages. The idea that lawyers are going to start bringing satellite litigation over this is crazy. I hate these stay violation cases. You can work on them for years without getting paid. And then you have to go through all of these arguments. And maybe, maybe if you're lucky, you'll get back some of the money that you invested in the case. There's no satellite litigation, Your Honor. Did this case go to mediation in the Ninth Circuit? What's that? Did this case go through the Ninth Circuit mediation program? Yes. And we were offered not, well. I don't want to know. Okay. All right. Thank you. I caught myself on that. I think we've given you some extra time here, and time has expired. We appreciate the arguments from both counsel this morning. The Thurman Brown v. Wilshire credit is submitted.
judges: Trott, McKeown, Ikuta